Joseph Allen **GREEN**, Appellant.

v.

T.he **STATE** of Texas, Appellee.

No. 47968.

Court of Criminal Appeals of Texas.

Feb. 13, 1974.

Robert J. Pandak, Houston, for appellant.

Carol S. Vance, Dist. Atty., James C. Brough and Donald Lambright, Asst. Dist. Atty., Houston, Jim D. Vollers, State's Atty. and Buddy Stevens, Asst. State's Atty., Austin, for the State.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for the offense of rape; the punishment was assessed at twenty-five years.

Appellant contends that the evidence is insufficient to show his guilt as a principal.

The record reflects that around 1:30 or 2:00 a. m. on April 20, 1969, the prosecutrix and her sixteen-year-old girlfriend, who was spending the night with her, went riding with Harold. Upon stopping for a train at a railroad crossing, a car pulled up behind them. Several black men got out of this car, walked up to Harold's car, and at least two of them pointed guns at them. The men used vulgar language and demanded that the occupants of Harold's car open the doors or they would blow their heads off. The three complied, and two of the black men got in. These two men took the prosecutrix' purse and Harold's wallet and made the three get on the back floorboard where the two men beat them over their heads with guns.

As these two men then drove Harold's car away, they were followed by a car and a truck which contained several men. The

two men stated that they were going to get back at the white people and were going to rape the girls and kill the three of them. The two men mentioned the names of the people in the truck and car, but neither of the victims could remember the names.

Within ten to fifteen minutes, the car was stopped in a wooded area. The prosecutrix and Harold were dragged from the car, and the other girl was made to get on the back seat. Harold was forced to lie on the ground with someone's knee in his back and a gun pointed to his head. He was warned that if he tried anything he would be killed. During this time, Harold could hear someone jacking up his car and trying to take a wheel off. He could also hear someone trying to remove a tape deck from his car.

While the girlfriend was being raped, another man took her watch. The prosecutrix was thrown on a blanket on the ground near the pickup. Her clothes were then torn off and a gun was held to her head. She was then raped by three different men. While the third man was assaulting her, two game wardens arrived. At that time she heard someone call the third attacker "Harold." As "Harold" (not to be confused with her companion Harold) got off of her, she raised up and the attackers had run into the woods. At that time, none of the attackers were in or around the cars.

The game wardens found the two girls in hysterics.

The officers also found that Harold's car had been jacked up and one wheel partially removed. A loaded .22 rifle was found between the truck and the other car.

At approximately 8:00 a. m., some five hours after the assaults, a deputy sheriff observed appellant and Harold Rogers standing beside a car which was parked on the side of the road some three miles from the scene of the rapes. Upon being confronted by the officer, appellant told him that he and Rogers had been fishing all night at a nearby reservoir, that he could not find his automobile, and that he and Rogers were trying to get a ride back home. Both appellant and Rogers were described as being muddy from the waist down, and neither of them had any fishing gear. Lepoleon Brown, David Gibson and Tommy Franklin were also arrested in the same general area. Andrew Frank Gibson was later arrested at his home.

Several tapes which were taken from Harold's car at the time of the rapes were found in the right back seat and floorboard of appellant's car.

Tommy Franklin testified that on the night in question he had been to a party with appellant. Thereafter, the two, along with Lepoleon Brown, David Gibson and Andrew Frank Gibson, assaulted the people in Harold's car at the railroad crossing. He further testified that prior to the time he raped the girl in the car that he and appellant had tried to get a tape deck out of Harold's car. Although Franklin testified that he never saw appellant rape anyone, he stated that appellant could have raped the prosecutrix and he could not have seen it.

Although neither the two girls nor Harold could identify appellant as being at the scene of the rapes, appellant testified that he was there. He also testified that on the evening in question he went to a dance and drank heavily. He related that after he took his date home he went to the Civics Club and he gave his car keys to Harold Rogers, then went to the car and went to sleep because he was drunk. He also testified that the next thing he remembered was Harold Rogers waking him up in the car and telling him to run because the game wardens were arriving. Appellant denied that he was awake at the time of the railroad crossing incident or that he saw a gun or that he was aware that anyone was robbed or raped. He specifically denied trying to help Tommy Franklin remove the tape deck from Harold's car. He admitted that he ran into the woods be-

cause he was scared, but denied telling him that he had been fishing all night.

The deputy sheriff who arrested appellant testified that at that time appellant had no odor of alcohol about him; he did not stagger, nor was his speech slurred.

■ The testimony of appellant shows his presence at the scene of the crime. Although mere presence alone is not sufficient to make one a principal, presence is a circumstance tending to prove that a person is a principal, which, when taken with other facts, may be sufficient to show that he was a participant. Lombardo v. State, 503 S.W.2d 780 (Tex.Cr.App., 1974), and cases therein cited.

■ Flight from the scene of the crime is a circumstance from which an inference of guilt may be drawn. Ysasaga v. State, Tex.Cr.App., 444 S.W.2d 305.

In the instant case, the jury had before it evidence not only of the rape of the two girls but also of robbery of them and Harold in the same transaction. The witness Franklin testified that appellant tried to help him remove a tape deck from Harold's car during this transaction while at least one of the others was attempting to take a wheel from the car.

Additionally, there are other circumstances which tend to show appellant's guilt. At the time of appellant's arrest, he was covered in mud from the waist down. The prosecutrix' hair had mud in it, as did Harold's clothing.

There is also evidence that appellant lied to the officer who arrested him when he told him he had been fishing all night and could not find his car. Appellant's own testimony shows that he had not been fishing and that he knew where his car was.

Finally, there is appellant's testimony that he was asleep in the back seat of his car during the course of events and did not wake up until Harold Rogers woke him up and told him to run. The prosecutrix testified that someone called "Harold" was assaulting her as the game wardens arrived. As soon as "Harold" got off of the prosecutrix, he ran toward the woods. No one was around either car except her girlfriend. This testimony directly contradicts appellant's version and is a circumstance from which the jury could infer appellant's guilt.

In Davila v. State, Tex.Cr.App., 388 S. W.2d 944, the conviction was for robbery. Davila and his brother drove into a service station and ordered gasoline. Both got out of the car. As it started to roll, the brother ordered Davila back into the car. He did so and applied the brakes and the motor was left running. Davila's brother robbed the attendant, got back in the car under the wheel and drove away. The car was found abandoned in a field, and the two were tracked by a bloodhound and found some eight miles away. The service station attendant testified that he thought Davila was intoxicated.

Davila testified that he was with his brother during the night in question, but stated that he was so drunk that he did not remember the robbery or participate in it and that he only remembered being shot at and being captured after fleeing on foot.

This Court held the evidence sufficient to make Davila a principal to the crime of robbery. The evidence in the present case is stronger than the facts in Davila's case.

■ Even though the testimony of Franklin did not show an actual rape by the appellant, there are sufficient testimony and circumstances for the jury to have concluded that the appellant was a principal to the rape of the prosecutrix.

The judgment is affirmed.